HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IRBIT MOTORWORKS OF AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROJET TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. C18-1271 RAJ<br><br>ORDER |

**I.     INTRODUCTION**

This matter comes before the Court on Defendant ElectroJet Technologies, Inc.'s Motion to Dismiss. Dkt. # 14. Plaintiff Irbit Motorworks of America, Inc. opposes the Motion. Dkt. # 16. For the reasons set forth below, the Court **GRANTS** Defendant's Motion.

**II.    BACKGROUND**

The following is taken from Plaintiff's Complaint, which is assumed to be true for the purposes of this motion to dismiss, as well as affidavits provided by both parties. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1107 (9th Cir.2002) (holding that in the context of a Rule 12(b)(2) motion

for lack of personal jurisdiction, the court is to take as true the allegations of the non-moving party and resolve all factual disputes in its favor).

Plaintiff is a Washington corporation with its principal place of business in Wixom, Washington. Dkt. # 1 at ¶ 1. Plaintiff manufactures and sells the Ural motorcycle. Dkt. # 17 at ¶ 2. One of the components of the Ural motorcycle is an electronic fuel injection ("EFI") system. In 2011, Plaintiff reached out to Defendant in order to explore the possibility of purchasing EFI systems from Defendant. *Id*. at ¶ 3; Dkt. # 22 at ¶ 3. Defendant is a Michigan company with its principal and only place of business in Michigan. Dkt. # 1 at ¶ 2. Defendant designs and manufactures engine management or EFI systems for purchase by vehicle manufacturers. Dkt. # 22 at ¶ 2. After Plaintiff contacted Defendant, Representatives from both companies met at Defendant's place of business in Michigan. Dkt. # 22 at ¶ 4. At the meeting, Defendant agreed to design and engineer a custom EFI system for Plaintiff. *Id*. After approximately two years of development, the engineering phase was complete and the product was approved for volume production. *Id*. Plaintiff then travelled to Michigan to negotiate a supply agreement ("Supply Agreement"). Dkt. # 22 at ¶ 6. In April of 2013, the parties entered into the Supply Agreement. Dkt. # 1 at ¶ 7.

In October of 2015, Defendant's CEO, Kyle Schwulst, met with Plaintiff at Plaintiff's offices in Washington to discuss the payment terms of the Supply Agreement. Dkt. # 17 at ¶ 6; Dkt. # 22 at ¶ 7. Defendant began requiring that Plaintiff prepay any purchase order in full. Dkt. # 17 at ¶ 6; Dkt. # 22 at ¶ 9. Schwulst visited Washington on two other occasions: once in 2013 to attend Plaintiff's annual dealer meeting, and once in September of 2017 to meet with Plaintiff to talk about the possibility of assisting in the design of a new engine. Dkt. # 22 at ¶ 10. Both parties estimate that Defendant's representatives visited Plaintiff's Washington office approximately six times since 2013. These six visits include the above-mentioned visits from Schwulst. Dkt. # 17 at ¶ 8; Dkt. # 22 at ¶ 11. These visits also include one visit from an engineering support person

sent by Defendant to Washington for one week at Plaintiff's request in 2013. *Id*. Pursuant to the warranties on its goods, Defendant provided Plaintiff with repair services for defective products. Defendant also purchased small materials, such as fuel injector fittings, from Plaintiff. Dkt. # 17 at ¶¶ 11, 12; Dkt. # 22 at ¶ 16. In 2017, the Supply Agreement expired. Dkt. # 22 at ¶ 13. At some point after the Supply Agreement expired, Defendant invoiced Plaintiff for an order of EFI systems that Plaintiff did not fully prepay, and as a result, Defendant refused to ship certain goods to Plaintiff. Dkt. # 17 Ex. F.

On August 28, 2018, Plaintiff filed this lawsuit against Defendant, alleging breach of contract. Dkt. # 1. On August 30, 2018, Defendant filed a lawsuit against Plaintiff in Oakland County Circuit Court in Michigan, alleging breach of contract and promissory estoppel claims arising out of the same dispute at issue in this case. Dkt. # 15 at ¶ 7. On September 21, 2018, Plaintiff filed a notice of removal and answer, affirmative defenses, and a counterclaim against Defendant in the Eastern District of Michigan. *Id*. Defendant then filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer this case to the Eastern District of Michigan. Dkt. # 14.

### III. DISCUSSION

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims against it for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Plaintiff has the burden of establishing personal jurisdiction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss" *Id*. The plaintiff cannot "simply rest" on the bare allegations of his or her complaint, and all "uncontroverted allegations" must be taken as true. *Ranza v. Nike, Inc.*, 793 F.3d

1059, 1068 (9th Cir. 2015). Where there are conflicts between parties over statements contained in affidavits, these conflicts must be resolved in the plaintiff's favor. *Id*.

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 113 Wn. 2d 763, 771, 783 P.2d 78 (1989). The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts . . . such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be found on either of two theories: general jurisdiction and specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction. *Id*. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations omitted). As Plaintiff does not assert that Defendant is subject to general jurisdiction, the Court will consider whether Defendant is subject to specific jurisdiction.

The court applies a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the defendant's forum-related activities, and (3) exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*,

374 F.3d 797, 802 (9th Cir. 2004). The burden then shifts to defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

        *a. Purposeful Direction*

A purposeful availment analysis is most often used in suits sounding in contract. *Schwarzenegger*, 374 F.3d at 802. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id*. By "purposefully availing itself" of the privilege of conducting activities within the forum State, the defendant is the recipient of the benefits and protections of that State. In return for these benefits and protections, the defendant must "submit to the burdens of litigation in that forum." *Id* (internal citations omitted). To have purposely availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).

It is undisputed that Plaintiff approached Defendant in order to initiate their business relationship and that Defendant does not advertise in Washington and did not solicit Plaintiff's business. Dkt. # 22 at ¶ 3. It is also undisputed that the Supply Agreement between the parties was drafted in Michigan by Defendant's attorneys, the Supply Agreement was executed in Michigan, Plaintiff accepts delivery of goods from Defendant in Michigan, and Defendant fulfilled Plaintiff's orders for goods in Michigan. Defendant is not a Washington entity, does not own or lease property in Washington, does not have an office in Washington, does not employ anyone in Washington, and has no contracts or other business in Washington other than its business with Plaintiff. Dkt. # 15.

Plaintiff argues that Defendant has sufficient minimum contacts for personal jurisdiction because Defendant's representatives travelled to Washington on "approximately" six occasions, Defendant shipped replacement product under warranty

to Plaintiff in Washington, and Defendant purchased connectors and fuel fittings from Plaintiff. Dkt. # 16 at 8-9. Plaintiff's argument is unpersuasive. A contract alone does not establish minimum contacts in a plaintiff's home forum, and a defendant's "transitory presence" will only support jurisdiction if it was meaningful enough to create a "substantial connection" with the forum State. *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015). Several of Defendant's visits to Washington were at Plaintiff's request and at least two visits were unrelated to the events that gave rise to this lawsuit. While one visit lasted for one week, this time period was not so extensive that Defendant's representative created a "substantial connection" with Washington. Defendant's shipment of replacement product is also insufficient to establish minimum contacts. Defendant shipped product to Washington to fulfill its obligations under the Supply Agreement. "[T]he fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Id*. Defendant's purchase of a small volume of fuel and electrical connectors for approximately $500 is similarly insufficient to justify the exercise of jurisdiction over Defendant. Dkt. # 20 at 3; Dkt. # 22 at ¶ 16. The majority of contacts that Plaintiff relies on to establish personal jurisdiction did not result from Defendant's affirmative actions, but instead arose out of Plaintiff's contacts with Defendant. Plaintiff's reliance is misplaced, as the jurisdictional analysis is limited to examining contacts that proximately result from Defendant's actions, not Plaintiff's. *Picot*, 780 F.3d at 1213.

        b. *Arising Out Of*

Even if Plaintiff had met its burden to show that Defendant purposely availed himself of the privilege of conducting business in Washington, Plaintiff did not meet its burden to show that its claims arose out of Defendant's actions. The Ninth Circuit has adopted a "but for" analysis to determine whether the claims at issue arose from a defendant's forum-related conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Plaintiff argues that, but for Defendant's visit in 2015 to discuss the payment

terms of the Supply Agreement, the parties would not be in litigation now. The Supply Agreement expired in 2017. Plaintiff's claims arise out of a purchase order that is, by its own admission, "independent from the Supply Agreement." Dkt. # 16 at 13. Further, this modification in Defendant's payment practices when dealing with Plaintiff did not present any issues for two years. Dkt. # 20 at 8; Dkt. # 22 at ¶ 13. The events underlying this lawsuit occurred in 2017, and did not arise out of Defendant's forum-related actions. As Plaintiff did not meet its burden to establish that the Court has personal jurisdiction over Defendant, Defendant's Motion to Dismiss is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 14.

Dated this 30th day of November, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge